IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MICHAEL RAY ROBINSON,

        Petitioner,

vs.

NICK LUDWICK,

        Respondent.

No. 13-CV-99-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

    *A.*    *Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *B.*    *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *C.*    *State Post-Conviction Relief Proceedings* . . . . . . . . . . . . . . . . . . **4**
    *D.*    *Federal Habeas Corpus Action* . . . . . . . . . . . . . . . . . . . . . . . **6**

III.  **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.  **STANDARDS OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

    *A.*    *28 U.S.C. § 2254* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
    *B.*    *Exhaustion and Procedural Default* . . . . . . . . . . . . . . . . . . . . **12**

V.   **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

    *A.*    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . **15**
        *1.*    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        *2.*    *Counsel's effectiveness for failing to object to the lack of*
            *African-Americans in the jury pool* . . . . . . . . . . . . . . . . **17**
        *3.*    *Counsel's effectiveness for failing to propose a jury instruction*
            *for second-degree sexual abuse as a lesser-included offense of*
            *first-degree kidnapping* . . . . . . . . . . . . . . . . . . . . . . . **19**

B.    *Right to a Jury Composed of a Fair Cross Section of the Community* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
    1.    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
    2.    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
C.    *Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
    1.    *Jury Instruction No. 18* . . . . . . . . . . . . . . . . . . . . **24**
    2.    *Fair decision maker* . . . . . . . . . . . . . . . . . . . . . . . **25**
    3.    *Lesser-included offenses* . . . . . . . . . . . . . . . . . . . . **27**
D.    *Right to a Jury Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . **28**
E.    *Cruel and Unusual Punishment* . . . . . . . . . . . . . . . . . . . . **29**

VI.    *CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . **30**

VII.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

# I.  INTRODUCTION

The matter before the court is Michael Ray Robinson's ("Petitioner") "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" ("Petition") (docket no. 1).

# II.  PROCEDURAL BACKGROUND

## A.  Conviction

On May 21, 1992, in the Iowa District Court for Linn County ("Iowa District Court"), Case No. CRF12712/FECR912712, a jury found Petitioner guilty of first-degree kidnapping (count I), in violation of Iowa Code sections 710.1 and 710.2, and second-degree robbery (counts II and III), in violation of Iowa Code sections 711.1 and 711.3. Appendix ("App'x"), Complaint (docket no. 19-4) at 4-6; App'x, Sentencing Transcript (docket no. 19-4) at 88.  On the same day, Petitioner was sentenced to life imprisonment on count I and ten years of imprisonment on counts II and III.  App'x, Sentencing Transcript (docket no. 19-4) at 88.  The Iowa District Court ordered the sentences to run concurrently.  *Id.*

### B. Direct Appeal

Petitioner appealed his conviction to the Iowa Court of Appeals on several grounds. First, Petitioner asserted that "there was insufficient evidence in the record as a whole for a rational jury to convict him of first-degree kidnapping," specifically that "there [was] insufficient evidence of the confinement and removal elements" of the crime and that there was "insufficient evidence he sexually abused" and robbed the victim. App'x, *State v. Robinson* ("*Robinson I*") (docket no. 19-5) at 4-6. Second, Petitioner claimed that trial counsel was ineffective "because they did not object to the court's failure to include an instruction on second-degree sexual abuse as a lesser-included offense of first-degree kidnapping," and "because they did not object to the systematic exclusion of black persons from the jury pool." *Id.* at 7.

On October 5, 1993, the Iowa Court of Appeals rejected Petitioner's sufficiency of the evidence and ineffective assistance of counsel arguments. Regarding the sufficiency of the evidence claim, the Iowa Court of Appeals held that the "removal and confinement" element was satisfied because, "[b]y removing the victim from the alley and confining her in the house, [Petitioner] significantly lessened his risk of detection." *Id.* at 5. Additionally, the Iowa Court of Appeals held that "the removal and confinement increased the risk of harm to the victim." *Id.* at 6. Regarding the sexual abuse and robbery elements, the Iowa Court of Appeals held that "there was substantial evidence to show [Petitioner] sexually abused the victim" and that there was "substantial evidence [Petitioner] intended to commit a theft." *Id.* at 6-7. The Iowa Court of Appeals further held that no Sixth Amendment violation occurred when trial counsel failed to request an instruction on second-degree sexual abuse as a lesser-included offense because no facts in the record supported that charge "and the jury could not rationally have convicted [Petitioner] of second-degree sexual abuse." *Id.* at 8. However, the Iowa Court of Appeals declined to review Petitioner's argument that black persons were "systematically

excluded" from the jury pool, citing the need "for a more complete record to be developed," and reserved that claim for post-conviction proceedings. *Id.* at 9.[1]

## C. State Post-Conviction Relief Proceedings

Petitioner filed an application for post-conviction relief in the Iowa District Court, asserting eight grounds for relief. App'x, Application for Post-Conviction Relief (docket no. 19-17) at 16-20. Those grounds are as follows: (1) ineffective assistance of trial counsel for failing to propose a jury instruction on second-degree sexual abuse as a lesser-included offense of first-degree kidnapping; (2) ineffective assistance of trial counsel for failing to object to Jury Instruction No. 18; (3) ineffective assistance of trial counsel for failing to fingerprint test a drug spoon found near the crime scene; (4) ineffective assistance of trial counsel for failing to adequately cross-examine witnesses at trial; (5) ineffective assistance of trial counsel for failing to exclude from trial a statement from the victim's friend that the victim was "going to be killed"; (6) ineffective assistance of trial counsel for failing to fully investigate hairs found on Petitioner and the victim; (7) ineffective assistance of trial counsel for failing to object to the jury pool's racial composition; and (8) the jury pool did not include a fair cross section of the community in violation of the Sixth Amendment, specifically that black persons were "systematically excluded." *Id.* at 16-19. The Iowa District Court denied Petitioner's claims in their entirety. *See* App'x, Robinson Post-Conviction Ruling I (docket no. 19-17) at 24-26. Petitioner appealed, arguing only that post-conviction counsel was ineffective for failing

---

[1] It is unclear from the record whether Petitioner sought further review from the Iowa Supreme Court. Because no argument is made otherwise, the court assumes that Petitioner sought further review or that no issue arises 28 U.S.C. § 2254(b)(1)(A) because Petitioner was convicted in 1992. *See* Respondent's Brief (docket no. 45) at 6-7 (discussing Petitioner's case on direct review).

to present evidence regarding the "systematic exclusion" claim at the post-conviction relief hearing.  App'x, Appellant's Brief (docket no. 19-7) at 7-10.

On February 9, 2000, the Iowa Court of Appeals agreed with Petitioner and reversed the Iowa District Court's decision, remanding for the purpose of holding an evidentiary hearing regarding the "systematic exclusion" claim.  *Robinson v. State* ("*Robinson II*"), No. 98-1805, 2000 WL 145043 (Iowa Ct. App. Feb. 9, 2000); App'x, Appellate Opinion II (docket no. 19-10) at 2.  The State applied for further review, opposing the order to remand, but the Iowa Supreme Court denied further review.  App'x, Application for Further Review (docket no. 19-11); App'x, Order Denying Further Review (docket no. 19-12); *see also* App'x, May 30, 2000 Procedendo (docket no. 19-13).  Petitioner did not seek further review of any issues.  On remand, the Iowa District Court found that "no material issue of fact exists which would preclude dismissal" and dismissed Petitioner's application for post-conviction relief.   App'x, Robinson Post-Conviction Ruling II (docket no. 19-14) at 1.  Petitioner appealed that dismissal, and the Iowa Court of Appeals again reversed and remanded for the purpose of holding an evidentiary hearing on the "systematic exclusion" claim.  *Robinson v. State* ("*Robinson III*"), No. 03-1058, 2004 WL 2386828, at *2 (Iowa Ct. App. Oct. 27, 2004); App'x, Appellate Opinion III (docket no. 19-21) at 2.  After holding an evidentiary hearing, the Iowa District Court denied the "systematic exclusion" claim on June 14, 2010. App'x, Robinson Post-Conviction Ruling III (docket no. 19-24) at 23-25.  Petitioner appealed, this time alleging that: (1) a violation of his right to counsel occurred when trial counsel failed to object to the jury pool's racial composition and (2) there was insufficient evidence at trial to support the removal and confinement element of first-degree kidnapping.  App'x, Appellant's Brief (docket no. 19-22) at 12-15.

On July 10, 2013, the Iowa Court of Appeals affirmed.  *Robinson v. State* ("*Robinson IV*"), No. 10-1337, 2013 WL 3458077, at *3 (Iowa Ct. App. July 10, 2013)

(unpublished table decision); App'x, Appellate Opinion IV (docket no. 19-25) at 3. The Iowa Court of Appeals held that Petitioner's ineffective assistance claim failed because Petitioner demonstrated neither a substantial underrepresentation of black persons in the jury pool nor a "systematic exclusion" of black persons from juries. *Id*. at *1-2. The Iowa Court of Appeals further held that Petitioner's insufficiency of the evidence claim was procedurally defaulted because it was not addressed during the evidentiary hearing. *Robinson IV*, 2013 WL 3458077, at *1 n.1; App'x, Appellate Opinion IV (docket no. 19-25) at 1 n.1. Petitioner applied for further review, asserting the following arguments: (1) ineffective assistance of trial counsel for failing to object to Jury Instruction No. 18; (2) ineffective assistance of trial counsel for failing to object to complicated jury instructions; (3) the Iowa District Court failed to clearly and adequately instruct the jury;[2] and (4) ineffective assistance of trial counsel for failing to object to the jury pool's racial composition. App'x, Application for Further Review (docket no. 19-26) at 2-7. On September 4, 2013, the Iowa Supreme Court denied further review. App'x, Order Denying Further Review (docket no. 19-27); *see also* App'x, September 6, 2013 Procedendo (docket no. 19-28).

## D. Federal Habeas Corpus Action

On September 30, 2013, Petitioner filed the Petition, alleging five grounds for relief: (1) ineffective assistance of trial counsel for failing to object to the jury pool's racial composition; (2) ineffective assistance of trial counsel for failing to propose a jury instruction on second-degree sexual abuse as a lesser-included offense of first-degree kidnapping; (3) the Iowa District Court "[failed] to adequately define removal" in the jury instructions; (4) the Iowa District Court "[failed] to include lesser offenses"; and (5) the

---

[2] Petitioner's second and third assertion in his application for further review were presented as the same claim. *See* App'x, Application for Further Review (docket no. 19-26) at 5. However, the court interprets these as separate grounds for relief.

Iowa District Court systematically excluded African-Americans from the jury pool. Petition (docket no. 1) at 5-8. On February 6, 2014, Nick Ludwick ("Respondent") filed an Answer. Answer (docket no. 12). In the Answer, Respondent admits that the first ground is exhausted, but Respondent did not waive the exhaustion requirement with respect to the other grounds. Answer (docket no. 12) ¶ 2(e). Additionally, Respondent argues "that the decisions of the Iowa courts were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent." *Id.* ¶ 2(e)(I).

On June 26, 2014, Petitioner filed a brief, in which he addressed the following issues: (1) Jury Instruction No. 18 violated the Due Process Clause because it conflated the legal and colloquial meanings of "removal," it "prejudicially modified" the uniform jury instruction for removal and it gave undue prominence to certain evidence;[3] (2) the trial judge was not a "fair decision maker" and, consequently, Petitioner was deprived of due process; (3) the jurors were "compelled to believe they would only be allowed to issue a guilty verdict" in violation of the Seventh Amendment; and (4) he "suffered cruel and unusual punishment" in violation of the Eighth Amendment when he "was sent to prison by the illegally obtained guilty verdict." Petitioner's Brief (docket no. 35) at 1-8. On September 29, 2014, Respondent filed a brief. Respondent's Brief (docket no. 45). On November 10, 2014, Petitioner filed a reply. Petitioner's Reply (docket no. 47). The matter is fully submitted and ready for decision.

### III. FACTUAL BACKGROUND

The Iowa Court of Appeals provided the following factual account on direct appeal:

> Lynette Wischmeier and Amy Hofer became friends
> when they were both working at K-Mart in Iowa City and

---

[3] Petitioner also claims that Jury Instruction No. 18 "invade[d] the province of the [j]ury." Petitioner's Brief (docket no. 35) at 4. The court reads this as an extension of Petitioner's Seventh Amendment argument. *See infra* Part V.D.

attending Kirkwood Community College in Cedar Rapids. The two women lived in Iowa City. On September 27, 1991, they left Iowa City at about 8 p.m. to go to some bars in Cedar Rapids which they had heard about from classmates. They traveled in Amy's Toyota Celica.

After some period of time, Lynette and Amy came to the East Side Maidrite in Cedar Rapids. While there, they were approached by [Petitioner]. [Petitioner] had a short conversation with them. The women left shortly and went to another bar.

Sometime after 1 a.m. on September 28, 1991, they returned to the Maidrite. [Petitioner] again engaged them in conversation. The bar started to close sometime between 1:30 and 2 a.m., and patrons were asked to leave. [Petitioner] asked the women for a ride home, claiming he did not have enough money for a cab. Although neither woman remembered agreeing to give [Petitioner] a ride, he got into the back seat of the car. Lynette drove the car, and Amy was in the front passenger seat.

[Petitioner] directed Lynette to stop in an alley in the 500 block of Sixth Street Southeast. He had a sudden personality change. [Petitioner] grabbed both of the women by their hair and began yelling. He then waived [sic] his arms about wildly. He struck Amy in the face. Lynette testified [Petitioner] asked for their money. Amy testified Lynette asked if he wanted their money and [Petitioner] said, "yeah, give me your money." He then took their money.

[Petitioner] struck Lynette quite hard and pulled her out of the car. He twisted Lynette's arm behind her back and told Amy to drive away, which she did. [Petitioner] took Lynette to a nearby deserted house, which he said he was living in. There he removed Lynette's clothing and his own before he forced her to have sexual intercourse. When the sex act was over Lynette asked if she could leave, but [Petitioner] would not let her leave, stating he intended to have sexual intercourse again. He did allow her to put on some of her clothing.

8

In the meantime, Amy drove to a nearby HandiMart and telephoned the police. Amy took police officers Troy Nogelmeier and Scott Syverson back to the alley where [Petitioner] had taken Lynette from the car. However, the officers were unable to determine the whereabouts of Lynette and [Petitioner] at that time.

Police officers Victor Mills and John Gales began searching vacant houses in the area. Eventually, at 3:57 a.m., they came to the house where [Petitioner] was keeping Lynette. They observed [Petitioner] and Lynette laying on a mattress on the floor, and [Petitioner] had his left arm over her. Lynette's breasts were exposed, and [Petitioner]'s pants were down around his knees, exposing his genital area. When the officers entered the room, Lynette ran to them and stated [Petitioner] had raped her. [Petitioner] was then arrested.

App'x, *Robinson I* (docket no. 19-5) at 2-4.

## IV. STANDARDS OF REVIEW

### A. 28 U.S.C. § 2254

Where a claim is properly before the court, the United States Code provides the standard for habeas corpus review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[s]ection 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001).

Regarding an erroneous decision of law, a state court decision can be "contrary to" Supreme Court precedent if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Further, the statutory phrase "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (internal quotation marks omitted).

An "unreasonable application" of Supreme Court precedent can arise in one of two ways:

> First, a state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the Supreme] Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407. Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407-08 (alterations in original); *see also Rompilla v.*

*Beard*, 545 U.S. 374, 380 (2005) (discussing the "unreasonable application" clause of *Williams*). Additionally,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 411. The Eighth Circuit Court of Appeals provided the following standard for an unreasonable application of law: "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (alteration in original) (quoting *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999)) (internal quotation marks omitted).

Under 28 U.S.C. § 2254(d)(2), federal habeas corpus "relief may be granted on a claim adjudicated in state court if the state court proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.'" *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)). "Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact." *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

Applying these standards to the present case, the court must determine whether (1) the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law; or (2) the Iowa courts reached an unreasonable determination of the facts in light of the evidence in the record. *See, e.g.*, *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (discussing the applicable standard); *Closs v. Roper*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (same); *Weaver*, 241 F.3d at 1029-30; *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000).

### B. Exhaustion and Procedural Default

A petitioner must exhaust all available state court remedies before obtaining federal habeas corpus review. 28 U.S.C. § 2254(b)(1)(A). To fulfill the exhaustion requirement, a petitioner must provide the highest state court with a full and fair opportunity to consider all of the claims before presenting them to a federal court. *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986); *see also* 28 U.S.C. § 2254(c). This requires a petitioner to invoke "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Iowa, a "prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts." *Welch v. Lund*, 616 F.3d 756, 759 (8th Cir. 2010).

The fair presentment component of the exhaustion requirement compels a petitioner to "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993) (quoting *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir. 1988)) (internal quotation marks omitted). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the petitioner's federal habeas corpus petition have been properly raised in the petitioner's state court proceedings. *See Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir.1995); *Flieger v. Delo*, 16 F.3d 878, 884-85 (8th Cir. 1994).

Additionally, failure to exhaust a claim in state court may implicate the independent and adequate state ground doctrine. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Specifically, the Supreme Court explained:

> 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125, n. 28, 102 S. Ct. 1558, 1570, n. 28, 71 L. Ed.2d 783 (1982), it is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060, 103 L. Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.

*Gray*, 518 U.S. at 161-62 (alterations in original). Apart from showing good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation, a petitioner may have a procedurally defaulted claim

reviewed if he or she can "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002); *Hatcher v. Hopkins*, 256 F.3d 761, 763 (8th Cir. 2001); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 985 (8th Cir. 1992); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir. 1989).

## V. DISCUSSION

Petitioner asserts eight grounds for habeas corpus relief under 28 U.S.C. § 2254. Those grounds are: (1) ineffective assistance of trial counsel for failing to object to the jury pool's racial composition; (2) ineffective assistance of trial counsel for failing to propose jury instructions on the lesser-included offense of second-degree sexual abuse; (3) "[t]he [Iowa District Court] failed to adequately include African-Americans [as a result of relying on] a biased and faulty jury pool source list"; (4) Jury Instruction No. 18, regarding the "removal and confinement" element of first-degree kidnapping, was so poorly constructed as to deprive Petitioner of due process of law; (5) Petitioner "did not have a fair decision maker on the bench conducting [his] trial which violated [his] 5th Amendment rights"; (6) the Iowa District Court's refusal to include jury instructions for lesser-included offenses violated Petitioner's due process rights; (7) the jurors were "compelled to believe they would only be allowed to issue a guilty verdict" in violation of the Seventh Amendment; and (8) Petitioner "suffered cruel and unusual punishment" in violation of the Eighth Amendment when he "was sent to prison by the illegally obtained guilty verdict."[4] Petition (docket no. 1) at 5-8; Petitioner's Brief (docket no. 35) at 1-8.

Ground one, alleging ineffective assistance of trial counsel for failing to object to the racial composition of the jury pool, ground two, alleging ineffective assistance of trial

---

[4] Petitioner initially asserted grounds one, two, three, four and six in the Petition. Petition (docket no. 1) at 5-8. Petitioner asserted three additional grounds, that is, grounds five, seven and eight, in Petitioner's brief. Petitioner's Brief (docket no. 35) at 1-8.

counsel for failing to propose an instruction on second-degree sexual abuse as a lesser-included offense of first-degree kidnapping, and ground three, alleging systematic exclusion of African-Americans from the jury pool, are exhausted. The remaining grounds are unexhausted and, therefore, are not properly before the court. However, the court deems it appropriate to address each ground on the merits pursuant to 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2).

### A. Ineffective Assistance of Counsel

Petitioner raises two grounds implicating his right to the effective assistance of counsel. Ground one alleges ineffective assistance of trial counsel for failing to object to the lack of African-Americans in the jury pool. Ground two alleges ineffective assistance of trial counsel for failing to propose second-degree sexual abuse as a lesser-included offense of first-degree kidnapping.

### 1. Applicable law

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. A criminal defendant also has the right to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985); *Douglas v. California*, 372 U.S. 353, 357-58 (1963).

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). While *Strickland* requires a showing of both deficient performance and prejudice, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. There is a strong presumption of competence and reasonable professional judgment. *Id.* at 689; *see also Sanders v. Trickey*, 875 F.2d 205, 207-08 (8th Cir. 1989) (noting that courts presume that "counsel's actions constitute[] reasonable trial strategy"). A defendant:

> must identify the acts or omissions of counsel that are alleged
> not to have been the result of reasonable professional
> judgment. The court must then determine whether, in light of
> all the circumstances, the identified acts or omissions were
> outside the wide range of professionally competent assistance."

*Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id*. In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id*.

In the context of reviewing petitions under 28 U.S.C. § 2254, the Supreme Court set forth a "doubly" deferential standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [28 U.S.C.] § 2254(d)." *Id*. Accordingly, the issue the court must decide "is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 2. Counsel's effectiveness for failing to object to the lack of African-Americans in the jury pool

In ground one, Petitioner argues that trial counsel provided ineffective assistance when they failed to object to the racial composition of the jury pool. Petition (docket no. 1) at 5-6. Respondent argues that the jury pool's racial composition was "fair and reasonable," and also that Petitioner did not make a "showing of systematic exclusion by the [Iowa District Court]." Respondent's Brief (docket no. 45) at 15. Petitioner first raised this ground on direct appeal to the Iowa Court of Appeals. App'x, *Robinson I* (docket no. 19-5) at 9. Additionally, Petitioner pursued this ground in his application for post-conviction relief and in each appeal following the denial of that application. *See* App'x, Application for Post-Conviction Relief (docket no. 19-17) at 18-19; *Robinson II*, No. 98-1805, 2000 WL 145043, at *1; App'x, Appellate Opinion II (docket no. 19-10) at 1; *Robinson III*, No. 03-1058, 2004 WL 2386828 at *1-2; App'x, Appellate Opinion III (docket no. 19-21) at 1-2; *Robinson IV*, 2013 WL 3458077, at *1-2; App'x, Appellate Opinion IV (docket no. 19-25) at 2-3; App'x, Application for Further Review (docket no.

19-26) at 7. Finally, Petitioner raises this ground in the Petition. Petition (docket no. 1) at 5-6. Therefore, ground one is exhausted and properly before the court.

To prevail on ground one, Petitioner must demonstrate that trial counsel's failure to object to the racial composition of the jury pool constituted deficient performance and that trial counsel's deficiency prejudiced the trial's outcome. The Iowa Court of Appeals concluded that Petitioner's trial counsel was not deficient because the circumstances could not support a "systematic exclusion" claim. *Robinson IV*, 2013 WL 3458077, at *1-2; App'x, Appellate Opinion IV (docket no. 19-25) at 2-3. The Iowa Court of Appeals analyzed Petitioner's claim under the *Duren* test,[5] which requires Petitioner to demonstrate:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also State v. Jones*, 490 N.W.2d 787, 792 (Iowa 1992). The Iowa Court of Appeals held that, because Petitioner failed to demonstrate the second and third prongs—that African-Americans were substantially underrepresented and that the Iowa District Court systematically excluded African-Americans from the jury pool, Petitioner's trial counsel was not deficient for failing to object to the jury pool's racial composition. *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 2-3.

The court finds that the Iowa Court of Appeals reasonably concluded that Petitioner's trial counsel was not deficient for failing to object to the "absolute [racial]

---

[5] The Iowa Court of Appeals' direct citation was to *State v. Jones*, 490 N.W.2d 787 (Iowa 1992), which adopted the *Duren* test. *Id.* at 792.

disparity" of two percent.[6] *Id.*; *see, e.g., Floyd v. Garrison*, 996 F.2d 947, 949-50 (8th Cir. 1993) (holding that an absolute disparity of 3.465% "does not constitute evidence of a fair-cross-section violation"). Because the jury pool's absolute racial disparity of two percent does not implicate constitutional concerns, trial counsel was not deficient for failing to object to its composition. Furthermore, even if Petitioner demonstrated substantial racial underrepresentation, he presented no evidence supporting a "systematic exclusion" of African-Americans from the jury-selection process. *See Duren*, 439 U.S. at 364. Petitioner's sole claim on this issue—that the Linn County Clerk of Court used only two of the three jury pool source lists required by Iowa law—was refuted by post-conviction counsel's investigation. *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 3. Therefore, the Iowa Court of Appeals reasonably held that trial counsel did not provide ineffective assistance. Accordingly, the Petition shall be denied with respect to ground one.

### 3. *Counsel's effectiveness for failing to propose a jury instruction for second-degree sexual abuse as a lesser-included offense of first-degree kidnapping*

In ground two, Petitioner alleges that trial counsel provided ineffective assistance when they failed to propose a jury instruction for second-degree sexual abuse as a lesser-included offense of first-degree kidnapping. Petition (docket no. 1) at 5. Petitioner raised this ground on direct appeal to the Iowa Court of Appeals. App'x, *Robinson I* (docket no. 19-5) at 8. Because Respondent does not argue otherwise, the court assumes that no issue

---

[6] The Iowa Court of Appeals refers to a two percent disparity, which references the percentage of allegedly excluded African-Americans from the jury pool. *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 2. Even if a three percent figure, denoting the absolute disparity of *all* underrepresented races is utilized, that total disparity still does not implicate constitutional concerns.

arises under 28 U.S.C. § 2254(b)(1)(A).[7] *See* Respondent's Brief (docket no. 45) at 19-20. In any event, the court deems it appropriate to address the merits of ground two pursuant to 28 U.S.C. § 2254(b)(2).

Respondent argues that Petitioner was not prejudiced by trial counsel's failure to request an instruction on second-degree sexual abuse because "[a] jury receiving a second-degree-sexual-abuse instruction could not have convicted Petitioner of that crime" and that Petitioner's trial counsel was not deficient because the facts did not support an instruction on second-degree sexual abuse. Respondent's Brief (docket no. 45) at 20. On direct appeal, the Iowa Court of Appeals held that Petitioner "was not prejudiced by trial counsel's failure to request an instruction on second-degree sexual abuse." App'x, *Robinson I* (docket no. 19-5) at 8. Specifically, after explaining the elements of second-degree sexual abuse in Iowa, the Iowa Court of Appeals held that "the jury could not rationally have convicted" Petitioner of that crime. *Id.* Further, in post-conviction relief proceedings, the Iowa District Court reiterated that "no prejudice resulted to [Petitioner] for failure to submit second-degree sexual abuse to the jury." App'x, Robinson Post-Conviction Ruling I (docket no. 19-17) at 24.

The court finds that the Iowa Court of Appeals reasonably held that Petitioner was not prejudiced by trial counsel's failure to request an instruction on second-degree sexual abuse. *See* App'x, *Robinson I* (docket no. 19-5) at 8. Petitioner has not rebutted the facts in the record with clear and convincing evidence, and, therefore, the court must presume that the Iowa Court of Appeals' findings of fact are correct. 28 U.S.C. § 2254(e)(1); *see Bainter v. Trickey*, 932 F.2d 713, 715 (8th Cir. 1991) ("[A] state court's specific factual findings made in the course of deciding an ineffective assistance of counsel claim are

---

[7] As discussed *supra* Part II.B, it is unclear whether Petitioner sought further review from the Iowa Supreme Court after the Iowa Court of Appeals resolved Petitioner's direct appeal.

presumed correct." (alteration in original)).  The Iowa Court of Appeals held that the facts in the record were legally insufficient to support a charge of second-degree sexual abuse. App'x, *Robinson I* (docket no. 19-5) at 8.  Therefore, Petitioner suffered no prejudice from trial counsel's failure to propose that instruction.  *See Harrington*, 562 U.S. at 111 (explaining that, when examining whether a defendant is prejudiced, "*Strickland* asks whether it is 'reasonably likely' the result would have been different").  The court will not review the Iowa Court of Appeals' determination that the evidence could not sustain a conviction for second-degree sexual assault.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  For all these reasons, the Iowa Court of Appeals reasonably held that Petitioner was not prejudiced by his trial counsel's performance.  Accordingly, the Petition shall be denied with respect to ground two.

### B. *Right to a Jury Composed of a Fair Cross Section of the Community*

In ground three, Petitioner argues that the Linn County Clerk of Court's jury pool source list systematically excluded minority members of the community in violation of the Sixth Amendment's fair-cross-section requirement.  Petition (docket no. 1) at 5, 8.[8] Respondent argues that Petitioner neither established a substantial underrepresentation of African-Americans in the jury pool nor demonstrated a "systematic exclusion" of African-Americans from the jury pool.  *See* Respondent's Brief (docket no. 45) at 14-15.  Because Petitioner exhausted ground one—ineffective assistance of trial counsel for failing to object to the jury pool's racial composition, the Iowa courts had a full and fair opportunity to

---

[8] Petitioner raises his fair-cross-section claim both as a stand-alone ground and in the ineffective assistance of counsel context.  Petition (docket no. 1) at 5, 8.  Respondent addresses only the latter.  Respondent's Brief (docket no. 45) at 14-15.

consider the fair-cross-section claim.[9] *See Ashker*, 5 F.3d at 1179 (holding that a habeas claim is exhausted where the petitioner "refer[s] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" (quoting *Kelly*, 844 F.2d at 558 (internal quotation marks omitted))). Therefore, ground three is exhausted and properly before the court.

### 1.    Applicable law

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Supreme Court "has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). The test for whether a jury's racial composition implicates constitutional concerns is the *Duren* test, which requires Petitioner to demonstrate:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364.

### 2.    Application

The court finds that the Iowa Court of Appeals reasonably concluded that an "absolute disparity" of two percent was "well under the percentages cited as non

---

[9] To establish ineffective assistance of counsel, Petitioner necessarily must demonstrate a fair-cross-section violation. If no fair-cross-section violation occurred, trial counsel was not deficient in failing to object to the jury pool's racial composition. *See Duren*, 439 U.S. at 364; *Strickland*, 466 U.S. at 687.

problematic." *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 2; *see, e.g.*, *Floyd*, 996 F.2d at 949-50 (holding that an absolute disparity of 3.465% "does not constitute evidence of a fair-cross-section violation") (citing *United States v. Clifford*, 640 F.2d 150, 155 (8th Cir. 1981) (holding that a 7.2% disparity "does not represent substantial underrepresentation")). In Petitioner's case, even though the jury pool was 100% white, the disparity of allegedly excluded African-Americans was just two percent. *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 2. Therefore, the Iowa Court of Appeals' decision was reasonable. *See Floyd*, 996 F.2d at 949-50.

Furthermore, the Iowa Court of Appeals reasonably found that African-Americans were not "systematically excluded" from the jury pool. Petitioner's sole allegation in support of this element, that the Linn County Clerk of Court "only used two source lists" rather than the requisite three, was refuted by one of Petitioner's own post-conviction attorneys. *Robinson IV*, 2013 WL 3458077, at *2; App'x, Appellate Opinion IV (docket no. 19-25) at 3. Based on the record, the Iowa courts reasonably determined that the jury pool represented a fair cross section of the community. 28 U.S.C. § 2254(d)(2); *Beck*, 257 F.3d at 901. Accordingly, the Petition shall be denied with respect to ground three.

## C. Due Process

Petitioner asserts three grounds that relate to his Fifth Amendment right to due process. First, in ground four, he contends that the Iowa District Court's definition of "removal" in Jury Instruction No. 18 was unconstitutionally flawed. Petition (docket no. 1) at 6. Second, in ground five, he claims that the trial judge was unconstitutionally biased. Petitioner's Brief (docket no. 35) at 7-8. Finally, in ground six, Petitioner argues that the Iowa District Court's failure to instruct the jury on lesser-included offenses deprived him of due process. Petition (docket no. 1) at 6.

### *1.     Jury Instruction No. 18*

In ground four, Petitioner asserts that the Iowa District Court's definition of "removal" in Jury Instruction No. 18 deprived him of due process because it conflated the colloquial and legal meanings of the word "removal." *See* Petitioner's Brief (docket no. 35) at 1. Respondent does not address ground four on the merits, arguing instead that this ground is unexhausted and procedurally defaulted. *See* Respondent's Brief (docket no. 45) at 21-23. Petitioner did not properly raise ground four in the Iowa courts. Therefore, it is not properly before the court. 28 U.S.C. § 2254(b)(1)(A). Nonetheless, the court deems it appropriate to address ground four on the merits pursuant to 28 U.S.C. § 2254(b)(2).

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72. The allegedly deficient instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.* at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "The only question . . . is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 72 (quoting *Cupp*, 414 U.S. at 147); *cf. Cool v. United States*, 409 U.S. 100, 104 (1972) (holding a jury instruction constitutionally infirm where it essentially "require[d] the defendant to establish his innocence beyond a reasonable doubt"). In this case, the challenged instruction concerning the "removal and confinement" element read: "On or about the 28th day of September, 1991, [Petitioner] confined Lynette Lynn Wischmeier or removed Lynette Lynn Wischmeier from her automobile to a vacant house." App'x, Application for Post-Conviction Relief (docket no. 19-17) at 16.

The court finds that Jury Instruction No. 18 did not "by itself so infect[] the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Petitioner essentially argues that the instruction forced the jury to convict him because it instructed

24

that "[Petitioner] taking [the victim] [f]rom the car to the house <u>was</u> a removal" for the purposes of first-degree kidnapping, thereby taking that issue from the jury.[10] Petitioner's Brief (docket no. 35) at 4. On direct appeal, the Iowa Court of Appeals held that the State introduced enough evidence at trial to support the "removal or confinement" element beyond a reasonable doubt. App'x, *Robinson I* (docket no. 19-5) at 5-6. The court will not review the Iowa courts' determinations of Iowa law. *See Estelle*, 502 U.S. at 67-68 (holding "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Further, the court presumes the unrebutted record developed in the Iowa courts is correct. *See* 28 U.S.C. § 2254(e)(1). Considering the instruction in the context of the entire trial record and the Iowa Court of Appeals' determination that the evidence was sufficient to support the conviction, the court finds that the instruction did not "so infect[] the entire trial that the resulting conviction violate[d] due process." *Estelle*, 502 U.S. at 72. Accordingly, the Petition shall be denied with respect to ground four.

### 2. *Fair decision maker*

In ground five, Petitioner contends that he "did not have a fair decision maker on the bench conducting [his] trial which violated [his] 5th Amendment rights." Petitioner's Brief (docket no. 35) at 7. Respondent does not address ground five on the merits, arguing instead that this ground is unexhausted and procedurally defaulted. *See* Respondent's Brief (docket no. 45) at 21-23. Petitioner did not properly raise ground five in the Iowa courts. Therefore, it is not properly before the court. 28 U.S.C. § 2254(b)(1)(A). However, the court deems it appropriate to address ground five on the merits pursuant to 28 U.S.C. § 2254(b)(2).

---

[10] Petitioner's ground seven argues that he was denied a true jury trial for the same reason. Petitioner's Brief (docket no. 35) at 7. For discussion of that separate ground, see *infra* Part V.D.

Petitioner argues:

> It is clearly the Judge's/decision maker's responsibility to prevent anything being submitted or argued at trial that clearly could result in mistrial.

> No matter who or what is responsible for compelling jurors to believe they have no choice but to convict (when the court records clearly state that two thirds of the jury did not believe [Petitioner was] guilty) the decision maker is responsible for allowing [Petitioner's] 5th Amendment right to have a fair and qualified decision maker. What my attorney did or failed to do has no bearing on the fact that I did not have a fair decision maker.

> No fair decision maker, actually qualified [so as to] allow [him or her] to be considered [to have] the ability to be fair, would have allowed anything at my trial that could have been used or argued as supporting a possibility to create a[n] opportunity for mistrial let alone something so clear as not allowing jury members the knowledge and right to find someone not guilty.

Petitioner's Brief (docket no. 35) at 8. In sum, Petitioner claims that he was deprived of due process because the trial judge was biased against him.

"[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884-85 (2009) (holding that the Due Process Clause requires recusal when "there is a serious risk of actual bias"). In *Aetna Life Insurance Co. v. Lavoie*, the Supreme Court held that the trial judge's years of difficulty with insurance companies was "insufficient to establish any constitutional violation." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986). The Supreme Court stated that

"only in the most extreme of cases [of alleged judicial bias or prejudice] would disqualification . . . be constitutionally required." *Id.* at 821.

Petitioner's contention that he did not have a fair decision maker is not supported by the record. Petitioner has not asked for an evidentiary hearing or attempted to introduce any new facts not previously discoverable. *See* 28 U.S.C. § 2254(e)(2). Without any support in the record, this ground is meritless. Accordingly, the Petition shall be denied with respect to ground five.

### 3.    *Lesser-included offenses*

In ground six, Petitioner argues that the Iowa District Court erred by "[f]ail[ing] to include lesser offenses." Petition (docket no. 1) at 6. Respondent does not address ground six on the merits, arguing instead that this ground is unexhausted and procedurally defaulted. *See* Respondent's Brief (docket no. 45) at 21-23. Petitioner argued on direct appeal and in his application for post-conviction relief that his trial counsel was ineffective for not proposing a jury instruction on the lesser-included offense of second-degree sexual abuse. App'x, *Robinson I* (docket no. 19-5) at 8; App'x, Application for Post-Conviction Relief (docket no. 19-17) at 16. However, the court interprets ground six as arguing that preventing the jury from considering all lesser-included offenses to first-degree kidnapping violates the Fifth Amendment guarantee of due process. *See* Petition (docket no. 1) at 6. Though Petitioner raised a somewhat similar claim on direct appeal and in his application for post-conviction relief, he did not give the Iowa courts a "full and fair opportunity" to consider this due process argument. Therefore, ground six is not properly before the court. 28 U.S.C. § 2254(b)(1)(A). Nevertheless, the court deems it appropriate to address ground six on the merits pursuant to 28 U.S.C. § 2254(b)(2).

It appears that Petitioner is challenging on due process grounds the Iowa District Court's omission of an instruction on lesser-included offenses to first-degree kidnapping. In essence, Petitioner appears to assert that the trial's outcome was unconstitutional

because the jury was never given the chance to convict him of a lesser-included offense.[11] But, the omission of a lesser-included offense instruction was reasonable because there is no constitutional right to a lesser-included offense instruction in a noncapital case. *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007) ("[T]he Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases."). Therefore, it cannot be said that the omission of an instruction for lesser-included offenses "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Accordingly, the Petition shall be denied with respect to ground six.

### D. Right to a Jury Trial

In ground seven, Petitioner asserts that he was denied a proper jury trial because "all jury members were compelled to believe they would only be allowed to issue a guilty verdict." Petitioner's Brief (docket no. 35) at 7. Respondent does not address ground seven on the merits, arguing instead that this ground is unexhausted and procedurally defaulted. *See* Respondent's Brief (docket no. 45) at 21-23. Petitioner did not properly raise ground seven in the Iowa courts. Therefore, it is not properly before the court. 28 U.S.C. § 2254(b)(1)(A). However, the court deems it appropriate to address ground seven on the merits pursuant to 28 U.S.C. § 2254(b)(2).

---

[11] The court's analysis assumes that the evidence at trial was sufficient to support one of first-degree kidnapping's lesser-included offenses. However, the Iowa Court of Appeals held in direct appellate proceedings and the Iowa District Court held in post-conviction proceedings that the evidence could not, as a matter of law, support a conviction for the lesser-included offense of second-degree sexual abuse, which Petitioner claims trial counsel should have requested. *See supra* Part V.A.3; App'x, *Robinson I* (docket no. 19-5) at 8; App'x, Application for Post-Conviction Relief (docket no. 19-17) at 16; App'x, Robinson Post-Conviction Ruling I (docket no. 19-17) at 24-25.

Petitioner focuses on a newspaper article reporting on his kidnapping conviction. In that article, two unnamed jurors were interviewed and the newspaper reported that "[t]wo jurors who asked not to be identified said a third of the jury did not agree that the case was a kidnapping. But they said they had no choice but to convict [Petitioner] of kidnapping because of the court's instructions regarding the law." Petitioner's Brief (docket no. 35) at 11 (displaying a photocopy of the article). This article, Petitioner claims, reveals that the jurors were compelled "to believe they ha[d] no choice but to convict." *Id.* at 8.

The court finds that the Petitioner has not met the burden of rebutting the state court record "by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty." 28 U.S.C. § 2254(e)(2)(B). The court cannot say that Petitioner's version of events, alleging that the jury was "compelled" to vote guilty, is more probable than the state's version, which alleges that the jurors' colloquial understanding of kidnapping did not match the legal definition as provided in the jury instructions. *See* Petitioner's Brief (docket no. 35) at 7-8, 10-11; Respondent's Brief (docket no. 45) at 18-19. Petitioner certainly has not proved his version by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(2)(B); *Smulls v. Roper*, 535 F.3d 853, 861 (8th Cir. 2008) ("[U]nless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." (quoting *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001) (internal quotation marks omitted))). Nothing currently in the record supports Petitioner's allegation of juror compulsion. Accordingly, the Petition shall be denied with respect to ground seven.

### E. Cruel and Unusual Punishment

Finally, in ground eight, Petitioner argues that his Eighth Amendment rights were violated "[w]hen [he] was sent to prison by the illegally obtained guilty verdict." Petitioner's Brief (docket no. 35) at 7. Respondent does not address ground eight on the

merits, arguing instead that this ground is unexhausted and procedurally defaulted. *See* Respondent's Brief (docket no. 45) at 21-23. Petitioner did not properly raise ground eight in the Iowa courts. Therefore, it is not properly before the court. 28 U.S.C. § 2254(b)(1)(A). However, the court deems it appropriate to reach ground eight on the merits pursuant to 28 U.S.C. § 2254(b)(2).

Petitioner alleges that his Eighth Amendment rights were violated because he was improperly convicted. "The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes . . . , and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)) (internal quotation marks omitted). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* at 319 (quoting *Ingraham*, 430 U.S. at 670) (internal quotation marks omitted). Petitioner's assertions do not implicate this concern. Rather, it appears Petitioner challenges "the constitutional guarantees traditionally associated with criminal prosecutions" in his statement that he "was sent to prison by the illegally obtained guilty verdict." *Id.* at 318 (quoting *Ingraham*, 430 U.S. at 671 n.40); *see also* Petitioner's Brief (docket no. 35) at 7. Thus, Petitioner does not present a cognizable Eighth Amendment claim. Accordingly, the Petition shall be denied with respect to ground eight.

## VI. CERTIFICATE OF APPEALABILITY

The final order in a habeas proceeding before a district court judge "shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit . . . judge issues a certificate of appealability, an appeal may not be taken to the court of appeals." 28 U.S.C. § 2253(c)(1). The Eighth Circuit has ruled that a district court is empowered to issue

certificates of appealability.  *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997) (analyzing the impact of the AEDPA on both 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b)).  A certificate of appealability may issue only when a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Tiedeman*, 122 F.3d at 522.  A substantial showing exists where the petitioner demonstrates that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *see also Miller-El*, 537 U.S. at 536 (articulating the standard); *Garrett v. United States*, 211 F.3d 1075, 1077 (8th Cir. 2000).

Courts can reject constitutional claims on procedural grounds or on the merits of the claim itself.  Where claims are rejected on the merits, a prisoner has to show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  For claims that are rejected on procedural grounds, the prisoner must demonstrate, at a minimum, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

After thoroughly reviewing the record in this case, the court finds that Petitioner has failed to make the required "substantial showing" for each of the grounds that he raised.  Because no reasonable jurist would find the resolution of this case debatable, an appeal is unwarranted.  Therefore, the court shall deny Petitioner's request for a certificate of appealability.  If Petitioner desires further review of his 28 U.S.C. § 2254 Petition, he may request issuance of a certificate of appealability from a circuit judge of the Eighth Circuit Court of Appeals.  *See Tiedeman*, 122 F.3d at 522.

## VII. CONCLUSION

The court finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254. The Iowa courts' adjudication of Petitioner's claims neither "resulted in a decision that was contrary to, [n]or involved an unreasonable application of, clearly established [f]ederal law." 28 U.S.C. § 2254(d)(1). And, no adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). In light of the foregoing, Petitioner Michael Ray Robinson's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (docket no. 1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent Nick Ludwick and against Petitioner Michael Ray Robinson. Additionally, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 16th day of April, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA